## THOMAS RICHARDSON vs. THE BOSTON CHEMICAL LABORATORY

One incorporated manufacturing company recovered judgment against another, and took out execution for $2868·93, and afterwards voted that the whole affair relative to said judgment should be left with the directors, with full power to compromise and settle the same in such manner as they should deem expedient: The directors voted that they would receive $1661·35 from the debtor corporation in full satisfaction of the execution, and·would receive the notes of the individual members of that corporation, for said sum, payable one half in six months and one half in nine months, with interest, and that the execution should remain in the hands of the treasurer of the creditors, as security for the payment of said notes: Afterwards, R. and other members of the debtor corporation gave their several notes, amounting in the whole to $1661·35, payable in six and nine months from the day on which said directors' vote was passed, and said treasurer signed an instrument acknowledging the receipt of the notes, and agreeing, when they should be paid, if paid when due, to cancel said execution, or transfer it to the makers of said notes, as they should direct: No payment was made on the notes: The creditor corporation, one year after the date of the

notes, voted that their treasurer inform the debtor corporation that the compromise aforesaid was no longer considered binding, and that the creditor corporation should look for payment on the execution, and was ready to give up said notes; and this notice was duly given by said treasurer. Afterwards, the creditor corporation sued out a pluries execution, and committed R. to prison thereon; and he brought a writ or *audita querela,* to be relieved from imprisonment. *Held,* that the respective obligations of the parties were to be determined by the terms of instrument signed by said treasurer; that payment of the notes, as they became payable, was a condition precedent to the discharge of the execution; that the failure so to pay the notes justified the creditor corporation in refusing to discharge the execution, and warranted the commitment of R. to prison.

A tender is not valid, if it be accompanied with a demand of a discharge of the party by whom or for whom the money is tendered.

THIS was a writ of *audita querela,* dated January 10th 1842, in which the plaintiff averred that, on the first Tuesday of March 1839, the defendants (a corporation established by *St.* 1835, *c.* 40,) recovered judgment against the South Boston India Rubber Company, (a corporation established by *St.* 1835, *c.* 55,) for $2868·93, debts and costs, and took out execution thereon: That on the 3d of June 1840, the defendants, by their directors, in consideration that the said India Rubber Company would forbear to prosecute a writ of review of said judgment, then pending, agreed with the said company to receive $1661·35 in full satisfaction of said execution, and to receive the promissory notes of individuals of the said company for said sum, payable one half in six, and one half in nine months from said date, with interest, and that the execution should remain in the hands of the treasurer of the Chemical Laboratory, (the present defendants,) as security for the payment of said notes: That afterwards, on the same day, certain of the stockholders of said India Rubber Company, among whom was the plaintiff, severally made and delivered their notes to the treasurer of said Chemical Laboratory, to the amount and in form as aforesaid, payable to said Chemical Laboratory, or order: That the said India Rubber Company did forbear to prosecute their petition for a review, and that the same was withdrawn: That on the 12th of October 1841, the defendants, by virtue of a pluries execution issued on the judgment aforesaid, pursuant to the statute, levied the same on the body of the plaintiff, as one of the

stockholders of said India Rubber Company, and that he gave bond for the liberty of the prison limits: That afterwards, on the 10th of January 1842, the plaintiff-tendered to the defendants the principal and interest of all the said notes, and all legal costs and charges up to that time, and demanded that the execution should be discharged; which the defendants refused; and that the defendants still unjustly restrain the plaintiff of his liberty.

Trial before *Wilde*, J. whose report thereof was as follows: The plaintiff, to maintain the issue on his part, put in the judgment and execution, and the petition for review mentioned in his writ, and also the record showing that said petition was disposed of by the entry of "neither party." He also called one of the jurors who tried the cause in which said judgment was rendered, whose testimony tended to show that the books of the defendants, except the memorandum book at the factory, were not produced at the trial, and that he (the juror) afterwards, when he became a director of that company, saw in said books an entry of $500, which he thought was not shown at the trial; but of this he was not very certain. This testimony, together with the other evidence on this point, the defendants were prepared to contradict and explain; but the ruling of the court, hereinafter stated, rendered the same unnecessary. The plaintiff then put in the following vote, as taken from the records of the defendants, dated May 4th 1840: "Voted, that the whole affair relative to the judgment, which this company holds against the South Boston India Rubber Company, be left with the directors of this company, with full power to compromise or to submit the same to arbitration, and to settle the same in such manner as they shall deem expedient." Also the following vote, taken from the records of the defendants' directors, dated June 3d 1840: "Voted, that in conformity to instructions of stockholders, we will receive the sum of sixteen hundred and sixty one $\frac{35}{100}$ dollars from the South Boston India Rubber Company, in full satisfaction for the execution of two thousand, eight hundred and sixty eight $\frac{93}{100}$ dollars,

held by the Boston Chemical Laboratory against the South Boston India Rubber Company; and that we receive the notes of individuals of that company for said amount of sixteen hundred and sixty one $\frac{35}{100}$ dollars, one half of which shall be payable in six, and the other half in nine months, with interest from this date; and that said execution remain in the hands of the treasurer of this company as security for the payment of said notes."

The plaintiff then put in the following paper: "Boston, June 3d 1840. Received of Josiah Dunham his two notes for two hundred and fifty dollars each, one payable in six months and the other in nine months from date hereof; also two notes of Thomas Richardson, of one hundred and seventy five dollars each, one payable in six and the other in nine months from date hereof; also two notes of Ebenezer Stevens, of one hundred and seventy five dollars each, one payable in six and the other in nine months; also two notes of J. Dunham, Jr. of seventy five dollars each, one payable in six and the other in nine months; also Wm. H. Howard's two notes for one hundred and five $\frac{67}{100}$ dollars each, one payable in six and the other in nine months; also H. Montgomery's two notes of fifty dollars each, one payable in six months and the other in nine months. Said notes are all on interest, and when the same are paid, I hereby agree (if the same are paid when due) to cancel or to transfer the execution which the Boston Chemical Laboratory now hold against the South Boston India Rubber Company to the abovenamed persons, as they shall direct. H. Montgomery, Treasurer Boston Chemical Laboratory."

The plaintiff then called a witness to prove the alleged tender, who testified that, on the 10th of January 1842, he went with the plaintiff to Montgomery, and asked him if he was treasurer of the defendants, and that he replied that he was; and that thereupon the witness offered him the amount, (which it is agreed was as it is stated in the plaintiff's writ,) and said to him, "we want Richardson's discharge from that execution." Montgomery said he could not

do it, and referred the witness and the plaintiff to three persons, as having charge of it, as a committee; of whom he said J. Dunham, sen. was chairman : That the witness went to said Dunham, and tendered the money to him, and told him the same about the discharge of the execution that he had told to Montgomery; and that said Dunham refused, and said he could not do it : That said Dunham went with the witness to Montgomery's office, (the plaintiff not being present,) and there found Ebenezer Stevens and others, (whom the witness thought to be connected with the Chemical Laboratory,) and had further conversation : That at the former interview at Montgomery's office, Montgomery said he was aware of the execution and of " that agreement," but that it was all done with, and that the notes were given up : That the plaintiff said, in reply, " no, not mine : " That towards the end of the conversation, Montgomery offered the plaintiff his notes and that he declined taking them : That Montgomery said " you might have had them, as you had notice of them : ' That the plaintiff said he had not had notice ; and that Montgomery then got them and laid them on the table : That the plaintiff consulted the witness and refused them : That the witness then made the tender to one of the attorneys of record in the suit in which the judgment of the defendants was recovered, and he refused it.

On cross-examination, the witness stated that he had the treasurer's receipt (above set forth) in his hand, when he went to make the tender, and should not have given the money to Montgomery, unless he had given him back something wherewith he could have obtained Richardson's discharge : That he said to Montgomery, " here is the money I suppose to be due, and I want Richardson's discharge ; " but did not think he told him he should not pay unless Richardson were discharged : That Montgomery said he had no doubt the money was right as to amount, but he could not do it : That when the witness offered the money to Dunham, he stated what it was, and what it was for, but said nothing about a discharge.

The defendants put in their vote, passed on the 3d of May 1841, as follows: " Voted, that the treasurer of this company be directed to inform the South Boston India Rubber Company, that the compromise made between this company and said India Rubber Company, in relation to an exeᴄution held against said India Rubber Company, is no longer considered binding, and we shall look for payment on the execution; and we are ready to give up certain notes, which were given by certain individuals, which, if they had been paid when due, would have cancelled the execution." And H. Montgomery, the defendants' treasurer, testified that the direction given in this vote was complied with.

The defendants also put in the following vote of the South Boston India Rubber Company, passed on the 13th of July 1841: " Voted, that the committee chosen at a previous meeting, consisting of Messrs. Montgomery, Howard and Dunham, jr., be and are hereby authorized to proceed immediately to sell all real estate of this company, (by auction,) and to apply the moneys arising from said sale to the payment of the debt due from this company to the Boston Chemical Laboratory ; also the debt due from this company to Cyrus Alger ; and also to the payment of other debts due from this company." Also the following vote of said India Rubber Company, passed May 30th 1840 : " Voted, that this company accept the proposal of the following persons to loan to this company their notes or money, the following sums, to wit : Josiah Dunham, five hundred dollars ; Wm. H. Howard, five hundred dollars ; T. Richardson, three hundred and fifty dollars ; E. Stevens, three hundred and fifty dollars; H. Montgomery, two hundred dollars ; J. Dunham, jr. one hundred and fifty dollars ; and that said loans be cancelled, within six months from this time, from the proceeds of the sales of real or personal estate of this company." And H. Montgomery testified that the notes referred to in this vote were contemplated to be given, part for the payment of the defendants, and part for another purpose. It appeared that the notes were not paid at maturity, but were surrendered

to the parties giving the same, except that of the plaintiff, which the defendants offered to prove was tendered to him soon after maturity; but, for the purposes of the trial, the same was not admitted as part of the evidence. Upon this evidence, the defendants contended that this suit could not be maintained; and further, that the tender was insufficient. And the court being inclined to the opinion that the tender was insufficient, but that the plaintiff could not, upon the other evidence, recover, the case was taken from the jury.

If the whole court shall be of opinion that the plaintiff is not by law, on this evidence, entitled to recover, a verdict is to be entered for the defendants; otherwise, a new trial is to be ordered.

The argument was had at the last March term.

*Dexter & G. W. Phillips*, for the plaintiff. The vote of June 3d 1840, passed by the defendants' directors, and not their treasurer's receipt of that date, constituted the contract between the two corporations. That contract was not conditional, but absolute, and was virtually acknowledged by the defendants to be such, by their vote to vacate it, passed in May 1841. This vote is also an answer to the objection which the defendants may interpose, that the vote of their directors was not a contract, but only a proposition, and that they never ratified the compromise. Payment of the notes at maturity was not a condition of the discharge of the execution. If any contract was made by the treasurer's receipt, it was not a contract between the defendants and any other party; for he had no authority to make such contract. Com. Dig. Attorney, C. 12, 13. Story on Agency, §§ 99, 166 Angell & Ames on Corp. (2d ed.) 243, 245. *Warner* v. *Howell.* 3 Wash. C. C. 12. *Bank of the Metropolis* v. *Jones*, 8 Pet. 12. Or if the receipt be held to constitute a second contract of the defendants, yet the plaintiff may hold them to the contract under the vote; that being least beneficial to them. *Munn* v. *Baker*, 2 Stark. R. 255.

The execution was to stand as collateral security for the notes. The notes, therefore, were the real debt, and the

execution could not be used until the notes became payable, and then only to enforce payment of the amount of the notes.

The plaintiff does not stand as one who took a receipt individually, but is entitled to all which the India Rubber Company gained or had a right to have.

The tender made to the attorney of record in the original suit was sufficient. He was, at least, the agent of the defendants. 3 Stephens Nisi Prius, 2600, 2601. This tender was made unconditionally. And the tender to Montgomery, the treasurer, was not made on such a condition as rendered it invalid. The reason of the rule, that a demand of a receipt in full, as the condition of a tender, makes the tender ineffectual, is that such a receipt would be an acknowledgment that the party has no other claim. But in the present case the party had the plaintiff in execution; and he could be discharged only by payment, or by the poor debtors' oath, or by some discharge. Tender of part would not, of itself, have discharged the execution, nor authorized the officer to surcease proceedings on it.

*Bartlett & Homer,* for the defendants. The receipt given by the treasurer qualified the more general terms of the vote of June 3d; and the vote and receipt together made the contract, if any was made. *Heywood* v. *Perrin,* 10 Pick. 228. *Barnard* v. *Cushing,* 4 Met. 230. The vote of the India Rubber Company, in July 1841, after the notes were given up, to provide for their debt to the defendants, shows that the company regarded the compromise as conditional. If any contract was made between the two corporations, it was a contract of composition, which must be strictly executed, in order to discharge the debtors. *Tufts* v. *Kidder,* 8 Pick. 537. *Upham* v. *Smith,* 7 Mass. 265. *Makepeace* v. *Harvard College,* 10 Pick. 298. *Mackenzie* v. *Mackenzie,* 16 Ves. 372. *Sewell* v. *Musson,* 1 Vern. 210.

If the vote and receipt did not constitute a contract, then there was only an offer of the defendants to accept part payment, which offer was never accepted and conformed to. Pay-

ment of part, on an agreement to receive it in full, is no satis-
faction, unless a release is given; there being no considera-
tion for such agreement. *Cumber* v. *Wane*, 1 Stra. 426.
*Wildes* v. *Fessenden*, 4 Met. 12.

The tenders of a part to the defendants' attorney and to
Dunham were of no avail. *Lewis* v. *Gamage*, 1 Pick. 347.
And the tender to the treasurer was insufficient, because it
was accompanied by a demand of a discharge. 3 Stephens
Nisi Prius, 2603, and cases there cited.

DEWEY, J. The first inquiry that arises upon this report is
as to the terms of the contract entered into by the parties, on
the 3d of June 1840; the plaintiff insisting that it was an abso-
lute and unqualified agreement, by the defendants, to accept
certain promissory notes, for the sum of $1661·35, in full of
their judgment, subject to no other condition, than that the
execution, which issued on such judgment, might be used for
the limited purpose of enforcing payment of the sum secured
by these notes. To sustain this position, the plaintiff relies
upon the vote of the defendants authorizing their directors
to adjust the demand against the plaintiff, at their discretion,
and the vote of the directors, under that authority. This
vote, the plaintiff insists, is to be taken as the evidence of the
terms of the contract between these parties. On the other
hand, the defendants contend that the only contract ever
entered into between the parties was that contained in the
written instrument signed by their treasurer.

If the position of these parties had been reversed, the plain-
tiff claiming under the written contract, signed by the treas-
urer, and the defendants insisting that they were bound only
by the vote of the directors, and alleging a want of authority
in the treasurer to execute a contract in the terms in which
it was made, the question would perhaps have presented more
difficulty. But, as the question now presents itself, the plain-
tiff would repudiate the written contract which he himself
received from the treasurer, as the evidence of the stipulation
between the parties, as to this matter. It seems to us, how-
ever, that although the vote of June 3d 1840 is to be looked

to as the source of authority for the treasurer, yet that, under that vote, if the treasurer could close a more favorable arrangement, and one giving better security to the corporation, it was competent for the directors, or the company, to ratify such contract, so entered into between the treasurer and the plaintiff, and thus give it full force and effect. The vote of the directors, of June 3d 1840, is to be taken only as a proposition, not binding upon the party making it, until accepted or acted upon by the other party. The contract is complete only when the minds of both parties meet, and it is their agreement, thus assented to, which binds the parties. The plaintiff was willing to deliver over the notes upon the terms stated in the contract executed by the treasurer. The defendants assented to and adopted that contract. · It then became the expositor of the arrangement made between the parties, and their respective obligations are to be determined by the terms of this instrument. It is conceded that this agreement, in the terms on which it was made with the treasurer, was not performed on the part of the plaintiff; the notes not being paid as they became due and payable. The condition of the promise contained in the writing executed by the treasurer — which was a condition precedent, upon which the execution against the plaintiff was to be discharged — was, therefore, not performed ; and, by reason of this failure on the part of the plaintiff, it was competent for the defendants to refuse to carry into effect the further stipulation, by which the plaintiff would have been discharged from the execution on which he stood committed at the time of suing out his writ of *audita querela*.

This view of the case is decisive of the present action, and requires judgment to be rendered in favor of the defendants.

Another ground of defence was also relied on, which would, as it seems to us, lead to the like result. Supposing the proper construction of the contract between the parties to be such, that upon the payment of $1665·35, the execution was to be discharged, and that the time of payment was not limited strictly to the precise days on which the notes fell due;

yet it was the duty of the plaintiff to make such payment before he could claim the benefit of it, or demand a discharge from the execution. No actual payment was ever made of this sum ; but the plaintiff insists that a tender was made of that amount, which was refused by the defendants. It is denied, by the defendants, that any legal tender was made. It is said that, in order to be such, it must be an unconditional offer of the money ; and if accompanied by any qualifying words, or with a demand of any thing to be done by the party to whom the tender is made, beyond the mere receipt of the money tendered, it will avoid the tender. Such seems to be the rule established by numerous authorities, in this Commonwealth and elsewhere. *Thayer* v. *Brackett,* 12 Mass. 450 *Loring* v. *Cooke,* 3 Pick. 48. *Wood* v. *Hitchcock,* 20 Wend. 47. *Brooklyn Bank* v. *De Grauw,* 23 Wend. 342. *Griffith* v. *Hodges,* 1 Car. & P. 419. *Peacock* v. *Dickerson,* 2 Car. & P. 51, *note. Strong* v. *Harvey,* 3 Bing. 304. *Ryder* v. *Townsend,* 7 Dowl. & Ryl. 119. *Glasscott* v. *Day,* 5 Esp. R. 48. *Higham* v. *Baddely,* Gow, 213.

The present case shows no unconditional offer to the defendants' treasurer of the sum to be paid ; but it was accompanied with a requisition of some writing to discharge Richardson. This condition the plaintiff could not legally annex to the tender of the money, and this would clearly render that tender of no effect. As to the other tenders the court express no opinion.

A verdict is to be taken for the defendants, agreeably to the stipulation of the parties.